15487

GREENWOOD COUNTY v. SHAY

(23 S. E. (2d), 825)

July 10, 1942.

*Mr. A. H. Dagnall* and *Mr. C. B. Earle,* both of Anderson, Counsel for the Appellant,

*Messrs. Beasley & Yeldell,* of Greenwood, Counsel for Respondent Greenwood County,

January 12, 1943.

The opinion of the Court was delivered by MR. ASSOCI-
ATE JUSTICE FISHBURNE:

The defendant appeals from an order issued at Cham-
bers by his Honor, Judge C. C. Featherstone, resident Judge
of the Eighth Circuit, at Greenwood, South Carolina, ad-
judging him guilty of criminal contempt for violation of an
injunction.

The appellant was the owner of a tract of land situate
about five miles north of the City of Greenwood, which the
County of Greenwood, acting as agent for the United States
Government, desired to acquire in connection with the estab-
lishment of an air field or air base for the training of pilots
in the armed forces of the United States. Upon the refusal
of the defendant to allow the engineers, surveyors, and
their assistants, working under the direction of an officer
of the Engineer Corps of the United States Army, to enter
upon his land for the purpose of making a survey, the plain-
tiff presented its verified petition to the Circuit Judge pray-
ing for a restraining order against the defendant. Judge
Featherstone thereupon, on June 2, 1942, issued a temporary
restraining order and rule to show cause wherein he en-
joined and restrained the defendant "from molesting, both-
ering, or interfering in any manner whatsoever with any
agent or representative of the County of Greenwood or the
United States of America, or anyone acting in their behalf
in going on to the lands belonging to or in charge of said
respondent for the purpose of inspecting, surveying, or in
doing any other preliminary work essential to the construc-
tion of an air field thereon, or in determining whether or
not said lands shall be required in the construction of an
air field." Incorporated in this order was a requirement that

the County of Greenwood file with the Clerk of Court for Greenwood County a bond in the sum of $250.00, conditioned to protect the defendant from any damage he might sustain by reason of the entry upon his lands of the agents or representatives of the plaintiff. This bond was duly executed and filed with the Clerk of Court. While the restraining order was in full force and effect, a surveying party, under the direction of the plaintiff, entered upon the lands of the defendant, on July 9, 1942, for the purpose of making a survey. The defendant approached them, and, learning that they were acting for the plaintiff, stated that he "would appreciate our getting off and staying off this property until the Government either condemned it or paid him for it." The engineers, considering this a demand to get off, immediately gathered up their instruments and equipment and left the property.

The foregoing account of what occurred was presented to Judge Featherstone by affidavit, and he issued a rule directing the defendant to show cause before him at his chambers in Greenwood why he should not be attached for contempt of Court for violation of the restraining order. In response to the rule, the defendant appeared in person before the Circuit Judge, and admitted that he made the statement hereinabove set out to the members of the surveying party.

Upon consideration of the whole matter, the defendant was adjudged guilty of contempt of Court, and the sentence of the Court was that he "be confined in the county jail for a period of sixty (60) days, and that he pay a fine of Two Hundred ($200.00) Dollars; provided, however, that said sentence be suspended during his good behavior."

The first ground of appeal is that the statement made by the defendant to the surveyors does not show a violation of the restraining order nor constitute a contempt of Court. It is argued that what the defendant said amounted to nothing more than a courteous request to get off his property.

It will be borne in mind that the defendant knew that the surveying party had entered upon his land with their instruments and equipment for the purpose of running lines and making a survey; he knew that they were acting as agents of the plaintiff in this respect, and were there under the protection of the restraining order issued by the Circuit Judge. He also knew that due to his previous refusal to permit their entry upon his land, he had been enjoined and restrained from "molesting, bothering, or interfering in any manner whatsoever" with these agents while upon his property and engaged in making a survey. While the forceful statement attributed to the defendant is ostensibly couched in polite language, we entertain no doubt that in effect it was intended as an order or direction that the surveyors get off and stay off of the defendant's property until the government either condemned it or paid him for it. The surveyors were evidently in no doubt as to his meaning; they immediately left.

It was stated in the case of *State v. Highsmith*, 105 S. C., 505, 90 S. E., 155: "The nature of a contempt and of the punishment to be inflicted for it depends, in a very considerable degree, upon the intent of the party charged with it."

We think the words and conduct of the defendant fully justified the Circuit Judge in adjudging him guilty of criminal contempt. What the defendant said and did molested, bothered and interfered with the surveyors, and clearly involved a violation of the letter and spirit of the restraining order. 32 C. J., Section 857, page 492; High on Inj. 4th Ed., Section 1446.

The defendant raises the question—Did the Circuit Judge have jurisdiction at Chambers to pass judgment and sentence in proceedings for criminal contempt not committed in the presence of the Court?

There are several cases from this State which hold that a Judge at Chambers has no jurisdiction to pass judgment or

sentence for criminal contempt except such as may be committed in the immediate presence of the Court. *State v. Highsmith,* 105 S. C., 505, 90 S. E., 154; *State ex rel. Kirven v. Scarborough,* 70 S. C., 288, 49 S. E., 860; *State v. Nathans,* 49 S. C., 199, 27 S. E., 52, 62.

In *State v. Nathans, supra,* it is said: "We will consider now whether the judgment and sentence for contempt are void because not rendered in term time, but at chambers. We have shown in this discussion on the preliminary question that this is an appeal from a judgment in a criminal contempt. We hold the order, or judgment and sentence, void, because such judgment and sentence must be rendered publicly and in open court. It is the act of the court, and not of the Judge, and is to be done in term time. *Ex parte Tolson,* 5 Strob. 88."

Further discussing the question, the Court said: "It cannot be said that any general power to punish for contempt is conferred on a judge at chambers, and such power is not incident to his powers at chambers, as it is incident to the circuit court as a court of record."

When the cases hereinabove cited were decided there was no legislative enactment conferring upon Judges at chambers purisdiction to punish for contempt. However, this general power was later granted to Judges out of Court by an Act of the General Assembly (Act No. 60, 1925 Acts, page 94) which enlarged the jurisdiction of Circuit Judges at chambers. This Act provides: "All regular and special judges shall have at chambers in any county within the circuit in which they are resident, or in circuit in which they are assigned to hold Court, all powers and jurisdiction which they have and exercise in open court in any county within said circuit, except for the determination of such matters as necessitate trial by jury."

The foregoing Act, with many subsequent amendments, is now incorporated in Section 37, 1942 Code.

Since the passage of the Act of 1925 (Section 37, 1942 Code), Circuit Judges sitting at chambers, subject to certain limitations, have the same power and jurisdiction in respect to the business to be brought before them as if they were respectively sitting in open Court, and this includes the power and jurisdiction to pass upon proceedings for criminal contempt. It is obvious that if a Judge, as such, may punish for contempt at all, he must have that power out of Court, since his acts in open Court are necessarily the acts of the Court.

We must take judicial knowledge of the fact that Courts of Common Pleas convene in the several counties of the State generally only twice a year, and that in very many of the counties they remain in session for very inconsiderable periods of time. Injunctions are sued out and should be granted only where some irreparable injury is threatened for which the parties have no adequate remedy at law. In the absence of the statute passed in 1925, and under decisions of this Court prior to the enactment of that law, a party enjoined and restrained from the commission of some irreparable damage, could, as soon as Court adjourned, disregard the injunction, and the law would be powerless to reach him until the Court might reconvene, several months later. Or if the injunctive order was issued at chambers the same result could follow. If a Judge at chambers under such circumstances could not assume jurisdiction in matters involving criminal contempt, then a defendant who had been enjoined might without hindrance even destroy the subject-matter of litigation. It was doubtless in recognition of an intolerable situation of this kind that the legislature in 1925 was moved to pass the law giving Circuit Judges at chambers power and jurisdiction to enforce the mandates of the Court and to punish violations thereof, the same as in open Court. The power of inflicting such punishment for violation of injunction orders might

well be regarded as an essential element of judicial authority necessarily conferred by a general grant thereof.

Finally, it is urged that the Circuit Judge committed error in imposing an excessive and illegal sentence.

Section 34, 1942 Code, provides that Circuit Courts shall have power to "punish, by fine or imprisonment, at the discretion of the said courts, all contempts of authority in any cause or hearing before the same * * *."

In the contempt proceeding at bar, the punishment was not in the alternative as provided by the statute, but the defendant was sentenced to imprisonment in the county jail for a period of sixty days *and* to pay a fine of $200.00. The Court or Judge granting an injunction is necessarily invested with large discretion in enforcing obedience to its mandate, and upon proceedings for attachment for its violation the extent of the fine or imprisonment to be inflicted as a punishment for the contempt rests in sound legal discretion. But the punishment in the case at bar goes beyond the statute, and is excessive and unwarranted by law, in that the sentence is not in the alternative—that is, fine *or* imprisonment.

Counsel for the defendant call our attention to Section 339, 1942 Code, wherein it is provided that for one kind of contempt committed in open Court the fine inflicted shall not exceed $50.00. This statute, however, is not applicable here. The punishment referred to in Section 339 deals only with contempts committed in the presence of the Court.

In our opinion, the case should be remanded to the resident Circuit Judge of the Eighth Circuit, to pass such sentence as may be appropriate, and in accordance with law.

Judgment reversed and case remanded.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE G. DEWEY OXNER, ACTING ASSOCIATE JUSTICE, concur.